UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ROGER D. RIMKA, | Civil Action No.: 19-13576 |
| | Honorable Robert H. Cleland |
| Plaintiff | Magistrate Judge Elizabeth A. Stafford |
| v. | |
| ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

_____/

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 16, 20]**

Plaintiff Robert D. Rimka appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying his application for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

---

[1] Under Federal Rule of Civil Procedure 25(d), Saul is the successor defendant.

- Rimka's motion [ECF No. 16] be **DENIED**;

- Commissioner's motion [ECF No. 20] be **GRANTED**; and

- the Commissioner's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

I.   **BACKGROUND**

   A.   **Rimka's Background and Disability Applications**

Born in June 1968, Rimka was 48 years old at the time of his amended alleged onset date in December 2016, which is when he submitted his application for benefits. [ECF No. 14-6, PageID.498-511]. Rimka has past relevant work as an apartment maintenance worker and security guard. [ECF No. 14-2, PageID.84; ECF No. 14-7, PageID.553]. He claimed to be disabled from chronic back pain and hypertension. [ECF No. 14-7, PageID.552].

After the Commissioner denied his disability application initially, Rimka requested a hearing, which took place in September 2018, and during which he and a vocational expert (VE) testified. [ECF No. 14-2, PageID.201-240]. In an October 2018 written decision, the ALJ found Rimka not disabled. [*Id.*, PageID.70-86]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Rimka timely filed for judicial review. [*Id.*, PageID.53-56; ECF No. 1].

**B.    The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments for a continuous period of at least 12 months, no disability will be found.[2] *Id*. Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id*. If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id*. At the final step, the Commissioner reviews the

---

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 1520(c); 920(c).
.

claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work. *Id*. The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Rimka was not disabled. At the first step, he found that Rimka had not engaged in substantial gainful activity since December 22, 2016.[3] [ECF No. 14-2, PageID.76]. At the second step, the ALJ found that Rimka had the severe impairments of "Degenerative Disc Disease and Spondylosis-lumbar spine; Bilateral Sacroiliac Joint Syndrome; Mood Disorder; Post Traumatic Stress Disorder (PTSD); and Cannabis Dependence." [*Id.*]. Next, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, PageID.76-78].

Between the third and fourth steps, the ALJ found that Rimka had the RFC to perform light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b), except:

---

[3] The ALJ noted that Rimka continued to work on and off from the alleged onset date until the end of March 2018, but his earnings did not reach the level of substantial gainful activity. [ECF No. 14-2, PageID.76].

4

>he can never climb ladders, ropes, or scaffolds; he can occasionally climb ramps or stairs; he can occasionally balance, stoop, kneel, crouch, and crawl; he must avoid concentrated use of hazardous moving machinery and concentrated exposure to unprotected heights; he is limited to simple, routine, and repetitive tasks, performed in a work environment free of fast paced production requirements, involving only simple work-related decisions, and with few, if any, work place changes; and he is limited to only occasional interaction with co-workers and the public.

[ECF No. 14-2, PageID.78]. At step four, the ALJ found that Rimka could not perform his past relevant work. [*Id*., PageID.84]. At the final step, after considering Rimka's age, education, work experience, RFC, and the testimony of the VE, the ALJ concluded that he could perform jobs that existed in significant numbers in the national economy, including inspector, folder, and scrap sorter. [*Id*., PageID.84-85]. The ALJ thus concluded Rimka was not disabled. [*Id*., PageID.85-86].

## II. ANALYSIS

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and conformed with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Rimka makes one catchall argument: "The ALJ provided an RFC that failed to account for [his] well-established limitations." [ECF No. 16, PageID.1040]. What follows is mostly a request for the Court to reweigh the evidence to find that he requires a more restrictive RFC, but the Court lacks the authority to reweigh the evidence. *See Cutlip v. Sec. of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts." *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 930 (E.D. Tenn. 2013). Most of Rimka's arguments disregard the wide latitude enjoyed by ALJs and do not show reversible error under well-established Social Security law.

Rimka also makes underdeveloped arguments. Courts in this circuit routinely treat as waived issues "'adverted to in a perfunctory manner, unaccompanied by some effort at developed argument[.]'" *ECIMOS, LLC*

6

*v. Nortek Global HVAC, LLC*, 736 F. App'x 577, 583-84 (6th Cir. 2018) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997). "Judges are not like pigs, hunting for truffles that might be buried in the record." *Knight Capital Partners Corp. v. Henkel AG & Co., KGaA*, 930 F.3d 775, 780 n.1 (6th Cir. 2019) (citation and internal quotations omitted).

Rimka's arguments that the ALJ erred in weighing the opinions of his treating physicians warrant consideration, but those arguments are also underdeveloped. Even so, the Court will address Rimka's treating-physician-rule arguments, and then expand on the insufficiencies of Rimka's other arguments.

**B.**

Rimka contends that the ALJ erred by not giving controlling weight to the December 2017 opinion of Divjot Minhas, M.D., and the September 2018 opinion of Ashaf Khan's, D.O. [ECF No. 16, PageID.1047-1049].

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions about the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. "Even when not controlling, however, the ALJ must consider

7

certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723.

An ALJ who gives less than controlling weight to a treating physician's opinion must provide "good reasons" for doing so to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). This procedural safeguard permits "meaningful appellate review" and ensures that claimants "understand the disposition of their cases." *Id*. at 242-43 (internal quotation marks and citation omitted). But "[t]he ALJ need not perform an exhaustive, step-by-step analysis of each factor." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017), *aff'd sub nom. Biestek v. Berryhill*, 139 S. Ct. 1148 (2019). The ALJ can satisfy the good reason "requirement by indirectly attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record." *Stewart v. Comm'r of Soc. Sec.*, 811 F. App'x 349, 352 (6th Cir. 2020) (citation and internal quotation marks omitted).

In a medical source statement about Rimka's ability to do work-related activity, offered many inconsistent and unsupported findings about Rimka's limitations.  Dr. Minhas said that Rimka could lift and carry 11-20 pounds occasionally; sit for 10-15 minutes at a time; stand for 30 minutes at a time; and walk for 15 minutes at a time.  [ECF No. 14-8, PageID.782]. In the next section, Dr. Minhas found that Rimka could never sit in an eight-hour workday, but could stand and walk for up to eight hours without a cane.  [*Id.*].  Dr. Minhas limited Rimka's use of his hands to frequently or occasionally for all activities, but then wrote that Rimka "has never been diagnosed with any medical condition."  [*Id.*, PageID.783].  He said that Rimka could never perform activities with his feet, but then left blank the section for medical or clinical findings to support that limitation.  [*Id.*].

Dr. Minhas wrote that Rimka could never climb stairs, ramps, ladders, or scaffolds; occasionally balance, stoop, crouch, and crawl; and frequently kneel.  [*Id.*, PageID.784].  He again left blank the section for supportive medical or clinical findings.  [*Id.*].  Dr. Minhas also left blank the section asking for medical or clinical support for his opinion that Rimka could never tolerate exposure to any environmental limitation except operating a motor vehicle.  [*Id.*, PageID.785].  Yet Dr. Minhas wrote that Rimka could perform a host of activities—like shopping, ambulating without an assistive device,

9

and walking a block at a reasonable pace on a rough and uneven surface—but could not climb a few steps at a reasonable pace without a handrail because of osteoporosis diagnosed with a lumbar x-ray. [*Id.*, PageID.786]. Then, when asked what work-related activities were precluded because of Rimka's impairments, Dr. Minhas identified only heavy lifting, kneeling, and crouching. [*Id.*].

The ALJ thoroughly described Dr. Minhas's opinion and gave it little weight because it was "internally inconsistent, and generally inconsistent with the other evidence of record." [ECF No. 14-2, PageID.82]. The ALJ highlighted Dr. Minhas's opinion that Rimka could sit for 10 to 15 minutes at a time, yet could never sit during a workday. [*Id.*]. The ALJ also noted that Dr. Minhas provided no evidentiary support for "the significant limitations in performing foot controls, performing postural activities, and limiting the claimant's exposure to environmental limitations." [*Id.*]. And the ALJ found that the "evidence of record supports that the claimant was generally noted to be able to change positions and to ambulate without difficulty," and that the "objective imaging revealed only mild findings in the lumbar spine." [*Id*]. The ALJ gave good reason for affording Dr. Minhas's opinion little weight.

Rimka calls the ALJ's reasoning that Dr. Minhas failed to provide evidentiary support for much of his opinion "nonsensical" because the

ALJ's RFC assessment is "almost identical" to the limitations in Dr. Minhas's opinion, except that the ALJ did not limit Rimka's use of foot controls. [ECF No. 16, PageID.1045-1046]. This argument fails to show reversible error. An ALJ's failure to follow the treating physician rule is harmless if (1) the opinion is "so patently deficient that the Commissioner could not possibly credit it; (2) the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of [the regulation] even though she has not complied with [its] terms." *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011) (internal quotation marks and citation omitted). The fact that the ALJ made RFC findings that mostly matched Dr. Minhas's opinion undermines Rimka's argument of reversible error. And the ALJ correctly reasoned that Dr. Minhas provided no evidentiary support for his finding that Rimka could never use foot controls; those findings were patently deficient. [ECF No. 14-8, PageID.782].

In September 2018, Dr. Khan provided a one-page form opinion stating, among other things, that Rimka could lift no more than 10 pounds because of lumbar spondylosis and bilateral SI joint syndrome. [ECF No. 14-10, PageID.972]. The ALJ gave this opinion some weight and rejected portions of it, including the weight and postural limitations. [ECF No. 14-2,

11

PageID.82]. The ALJ reasoned that "the objective imaging revealed only mild spinal impairments, and clinical evaluations generally demonstrated tenderness and reduced range of motion of the spine, but the claimant retained the ability to change positions and ambulate without difficult." [*Id.*].

Rimka argues that the ALJ erred by interpreting objective and clinical examination findings to find that he could lift more than 10 pounds. [ECF No. 16, PageID.1048]. But, "[i]n fact, the regulations require the ALJ to evaluate the medical evidence to determine whether a claimant is disabled." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 726 (6th Cir. 2013) (citing 20 C.F.R. §§ 404.1545(a)(3), 416.945.(a)(3); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir.2004)). Rimka also contends that Dr. Khan's opinion is consistent with the record, but he cites no evidence in the record to support this contention. [ECF No. 16, PageID.1049]. This undeveloped argument is waived. *ECIMOS,* 736 F. App'x at 583-84; *Knight Capital,* 930 F.3d at 780 n.1.

Rimka's treating-physician-rule arguments should be rejected.

## C.

The Court now turns to it reasons for finding Rimka's remaining claims without merit.

Rimka complains that the ALJ failed to provide enough of a narrative explanation for his RFC findings, but the ALJ described Rimka's subjective symptom claims, medical history, and opinion evidence on over five pages to explain his RFC determination. [ECF No. 14-2, PageID.79-84]. And though Rimka repeatedly argues that the ALJ left out relevant portions of the record, the ALJ was under no duty to discuss "every piece of evidence submitted by a party" or address every detail of the medical opinions. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006).

Rimka also poses questions that he says the ALJ failed to answer. For example, when addressing the ALJ's finding that Rimka can have only occasional interaction with coworkers and the public, Rimka asks, "What about supervisors? If someone has workplace limitations due to mood lability, wouldn't that reasonably extend to supervisors?" [ECF No. 16, PageID.1041]. He posits that "it would be reasonable to assume the supervisors are more likely to a source of conflict than co-workers because they are ones who are judging and evaluation Plaintiff's work activities." [*Id*.]. Rimka cites less than a handful of pages in the record that he says supports a finding that he is too angry to be supervised. [*Id*. (citing ECF No. 14-7, PageID.571; ECF No. 14-8, PageID.766; ECF No. 14-10, PageID.956, 965)].

The ALJ, in contrast, considered the full record and found that, although Rimka had intermittently shown an inappropriate mood, he "generally demonstrated normal psychiatric findings, with full orientation, appropriate mood and affect, normal insight, normal judgment, normal attention span and concentration, and normal memory." [ECF No. 14-2 PageID.81]. Rimka's argument and reliance on less than a handful of records invites the Court to reweigh the evidence, and to do so on an underdeveloped argument.

Rimka argues that the ALJ erred by giving some weight to the opinions of consultative examiners P. Douglas Callan, Ph.D., and Thomas R. Koopman, MA, LLPC. [ECF No. 16, PageID.1042-1043]. In their opinion, Dr. Callan and Mr. Koopman concluded that Rimka could perform "entry level jobs that are low stress." [ECF No. 14-10, PageID.968]. Rimka acknowledges that the ALJ adopted the low-stress limitation, but he complains that the ALJ misrepresented the opinion, left out the full context of the opinion, and failed to discuss the recommendation for counseling before training or employment. [ECF No. 16, PageID.1042-1043]. This argument lacks merit for three reasons. First, the regulations do not require that an ALJ give the opinions of consultative examiners any particular weight. *Gavit v. Comm'r of Soc. Sec.*, No. CV 17-13066, 2018

14

WL 7051094, at *4 (E.D. Mich. Dec. 7, 2018), *adopted,* 2019 WL 233213 (E.D. Mich. Jan. 16, 2019).  Second, the ALJ did not have to detail every part of the opinion.  *Kornecky*, 167 F. App'x at 507.  Third, Rimka makes no effort to develop his argument that the record shows that he could not perform low stress work without counseling.  That argument is waived.  *ECIMOS,* 736 F. App'x at 583-84; *Knight Capital,* 930 F.3d at 780 n.1.

Rimka also finds fault with the ALJ making his RCF determination without relying on a medical expert.  [ECF No. 16, PageID.1040].  This argument also lacks merit.  An ALJ's RFC finding can be supported by substantial evidence even without a fully consistent physician opinion.  *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401-02 (6th Cir. 2018).  "No bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding, but the administrative law judge must make a connection between the evidence relied on and the conclusion reached."  *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019).  And the ALJ did rely in part on the opinions of medical expert, giving an opinion from a state agency medical great weight, and the opinions of other medical experts some weight.  [ECF No. 14-2, PageID.81-82].

Rimka contends that the ALJ erred by failing to discuss his testimony that he needed to "change positions every 20 minutes." [ECF No. 16, PageID.1044-1045]. But the ALJ did not have to discuss every symptom Rimka alleged. *Dickey-Williams v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 792, 807 (E.D. Mich. 2013) ("[T]he fact an ALJ did not specifically state every piece of evidence or every symptom is not an error."). And the ALJ did not have to accept Rimka's subjective complaints. His duty was to evaluate whether the evidence in the record supported the extent of Rimka's alleged limitations. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304. For the Court to find reversible error, Rimka would have to sustain his burden of showing that he needed a more restrictive RFC. *Preslar*, 14 F.3d at 1110. He does not sustain his burden of showing that he needs to change positions every 20 minutes.

Rimka ends his brief by asking the Court to imagine being in his position. [ECF No. 16, PageID.1050-1051]. Although the Court does not doubt that Rimka has had significant challenges, it cannot recommend that the ALJ's decision be vacated without him showing reversible error. He has not shown reversible error, so the ALJ's decision should be affirmed.

### III.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motion [ECF No. 20] be **GRANTED**; that Rimka's motion [ECF No. 16] be **DENIED**; and the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

|  |  |
|---|---|
| Dated: February 16, 2021 | s/Elizabeth A. Stafford<br>ELIZABETH A. STAFFORD<br>United States Magistrate Judge |

### NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 16, 2021.

> s/Marlena Williams
> MARLENA WILLIAMS
> Case Manager